BRADLEY LUMBER COMPANY of Arkansas, Appellant, v. R. D. HUNTING LUMBER COMPANY, Appellee.

No. 41753.

JUNE 23, 1934.

REHEARING DENIED SEPTEMBER 27, 1934.

Edward J. Dahms, for appellant.

Don Barnes, for appellee.

ALBERT, J.—Plaintiff brought action against the defendant to recover a balance of $919.79, with interest, upon an account for a carload of lumber bought by defendant from plaintiff. Defendant admits the claim of the plaintiff and the amount due thereon, but files counterclaim in the sum of $882.50, growing out of an alleged breach of contract between the plaintiff and the defendant by which the plaintiff contracted to furnish the defendant ten or fifteen cars of gum box shooks at an agreed price.

There is but one question raised in the appeal, and that is whether in fact there ever existed a contract between the plaintiff and the defendant to furnish the shooks aforesaid. If such contract did exist, it must be found in the letters and telegrams that passed between these parties. There is no dispute between counsel as to the law governing this question; that is, that when an offer is made on one side it must be definite and certain in its terms, and the accept-

ance must be an unqualified and unconditional acceptance of the identical terms set out in the offer.

Turning to the evidence in the case, we find that on November 10, 1926, the defendant wrote the plaintiff asking for quotations on gum cucumber boxes delivered at Rockford, Illinois. This letter also set out a detailed statement of the make-up of said boxes. On November 16, 1926, the plaintiff, by mail, answered the letter quoting prices on such boxes f. o. b. Warren, Arkansas. On November 19, 1926, the defendant wired the plaintiff as follows:

"Your two quotations sixteenth would appreciate your quoting delivered prices."

On the same day the plaintiff wired the defendant quoting prices, and on the next day confirmed the last-named telegram by letter, in which, among other things, it said:

"We sincerely hope you will be able to pass us this business, and suggest if you are interested that you wire us acceptance. We are in position to handle this order just now * * *."

On November 30, 1926, the defendant wired the plaintiff as follows:

"Your quotations sixteenth and twentieth on the cucumber boxes stop have just closed with our customer who is large grower hot house cucumbers for from ten to fifteen cars per your quotation stop has given us specifications on first three cars which are to be shipped last December and balance to be ordered out enough ahead to give you plenty time stop all will be needed before May first at latest stop order booked with proviso that balance of order may be cancelled if first three cars not satisfactory."

On December 2, 1926, the plaintiff wired the defendant: "Retel cucumber boxes mail order."

On December 1, 1926, the defendant wrote the plaintiff:

"We wired you yesterday that we had landed the Cucumber Crate business on which you quoted us Nov. 16th and Nov. 20th. Our formal is enclosed. * * * We had to bring considerable pressure to bear to land this business and we do not want to fall down now on pleasing them. * * * Therefore, we want you to see that this stock shipped is first class in every way."

On December 2, 1926, the defendant wrote the plaintiff a letter as follows:

"With reference to our Gum Crating order, No. 41790 sent you Dec. 1, we would like some information. From everyone else, from whom we had quotations, we got a sample crate and we submitted several of these to our customer. These samples, as I remember, were practically clear and the sides, tops and bottoms were, I judge, rotary cut. When the writer went through your plant I did not recollect having seen any Rotary machine of any kind and wish you would write us as to whether these sides, tops and bottoms will be Rotary cut or resawed stock. As a matter of fact, I suppose the resawed stock would be preferable but I had my doubts, if the stock was resawed about it coming out as clear as though it were Rotary sawed. It has just come to my mind that we might run into difficulty on account of the fine sample submitted and I was wondering whether your crate would look 100% clear, like all these samples appeared to be, or whether it would contain some knots. Wish you would write us promptly in regard to this as we have more of this business coming up and we don't want to run into any possible trouble in regard to it. * * * "

On December 8, 1926, the plaintiff wrote the defendant. The material part of the letter is as follows:

"Enclosed herewith is confirmation of our wire of December 6th advising we did not understand the specifications on your inquiry. By way of explanation our Box Factory Superintendent understood this box to contain six pieces, as follows:
"Two ends,
"Two sides,
"One top in two pieces totalling 6½" width,
"One bottom in 2 pieces totalling 6½" width.
"It was our superintendent's idea that you were using two strips on the top and bottom with a space between and on this basis your inquiry was figured and our quotation made. With this error in view, we will not be able to handle your order at the prices and regret the circumstances very much. We should like to have you think this over and write us in regard to same * * * "

On December 1, 1926, three orders were inclosed in the letter sent by the defendant to the plaintiff.

742

In pursuance of the telegram by the Bradley Lumber Company to the Hunting Lumber Company, dated December 2, on December 6 the Bradley Company wired the Hunting Company as follows:

"Your order cucumber crates specifications not in accordance with our interpretation your inquiry. Will not be able to furnish at the price. Writing fully in regard to this and the grade your letter second."

Some further correspondence passed between these parties, with the result that nothing was delivered under this alleged contract.

The defendant contends, and the district court adopts this view, that the telegram sent by the defendant to the plaintiff on November 30, 1926, was accepted by the plaintiff by its telegram dated December 2, and thus the contract was closed. With this we cannot agree.

As stated above, the law is that when a certain specific offer is made by one party, the offeree's acceptance must be of the exact terms of the offer. This, of course, is founded on the fundamental doctrine that to make a contract there must be a mutual meeting of the minds on the same thing at the same time. We have read and re-read this correspondence, and have been unable to find any point in its progress where there was an unqualified offer made and an unqualified acceptance of the exact terms of the offer. This being true, there is no evidence upon which it could be held that a contract existed between these parties with reference to these shooks or gum boxes. This being our conclusion, it follows that the district court erred in allowing the defendant to recover on its counterclaim. —Reversed.

CLAUSSEN, C. J., and ANDERSON, MITCHELL, KINTZINGER, and DONEGAN, JJ., concur.